May it please the Court, my name is David Curran. I represent the University of Arkansas, which is the appellant in this case. In Sossaman v. Texas, the Supreme Court held that a state does not consent to waive its sovereign immunity to private suits for monetary damages unless a statute expressly and unequivocally includes such a waiver. In this case, section 2000 D-7 lacks the unequivocal statement that this rule demands. How can page 1662 of 131 Supreme Court, as you well know, the majority says that provision, meaning 2000 D-7, expressly waives state sovereign immunity for violations of Title 9? It doesn't say expressly waives Eleventh Amendment immunity. It says expressly waives sovereign immunity, and it's referring to the terms of that statute. How do you, how can we? Are you talking about the last section in Sossaman? Pardon? Yes. Okay. In that section, you know, the statute itself refers to jurisdictional. Part 4 of the Sossaman. I understand now. In that section, as I understood that section, the court was interpreting the argument made by the prisoner in that case, which was that if RLUIPA fell within. I know what they were discussing, but that's what they said, what I read. It wasn't. How can we do anything but follow what they said? Because that was not a holding in the case. It was not even raised by a litigant. 2000 D-7 fails to extend the waiver to monetary claims. Is it considered dicta? I don't think it's considered dicta. It's a half of it. The bank says if it's considered dicta, we follow it even if it's not the holding. I understand, Judge Bitton. I would submit that since it's not even argued by a party, there's no analysis there that it's not even considered dicta. Texas argued an entirely different point that RLUIPA does not fall in the residual cause. Having won that argument, there is no occasion to go further and do any considered analysis of the issue. And when we look at what the Supreme Court has actually said as considered dicta on 2000 D-7, it's made contrary assertions. It said, for example, in Franklin that 2000 D-7, quote, says nothing about the nature of the available remedies. And then in Franklin, it compared 2000 D-7 to a saving clause at issue in footnote 22 of Milwaukee v. Illinois where the Court said that there is a statute in which the Congress expressed no considered judgment as to the available remedies. So to set up the analogy there, likewise, 2000 D-7 expresses no considered judgment as to the available remedies. That is considered dicta that I think is impactful. Wait a minute. Congress doesn't express a considered judgment. That's a disconnect for me. Congress writes statutes. Lawyers and judges and executive branch agencies attempt to do considered judgments. We don't find considered judgment in the statutory language. We obey it. But sometimes Congress simply does not pass on the issue, I think is the point. And here, as in... Wait a minute. How are we supposed to define that? Because the statute simply does not say. It sets up an if-then proposition without saying whether any type of entity is actually amenable to suit. It doesn't say. So this statute, like the one at issue in Milwaukee v. Illinois, is one for Congress actually delegated the issue to the courts to develop this in a common law tradition rather than deciding the issue for itself. But it expressly stuck the words in there about remedies at law. It's been around this horn before and it said, okay, we're not going to make that omission mistake again. Right, but it didn't say states are subject to remedies law. It did not say that states are subject to remedy at law. It did not put a period... Remedies both at law and in equities. D-7A2. I understand, Judge Locombe, but then it did not add a period after the word for such a So it's context-dependent. It equivocated. It said states are subject to remedy at law to the extent that these other types of entities are, and then it expressed... Now the other type of entities are every entity there could be. Possibly, including the federal government. Oh, I'm sorry. It says public or private. That's everything. That's right. And entity is a nothing word, so it means just to the extent it could possibly be. Well, in Lane v. Pena, the court actually grappled with that issue and said public entities  with which states are to be equalized. Another possibility, Judge Bitton, is that Congress thought that there were different types of remedial regimes attached to private entities and public entities, otherwise it's surpluses, and states are to be subject to the lesser, least severe remedial scheme, or perhaps the greater. We can't say because the statute doesn't say. So in Lane v. Pena and in Franklin, the court grappled with what does that remedial provision mean and came up with the conclusion that it is equivocal. It just does not say. And it also stands... And what doesn't this one say? I mean, because it doesn't have the word damages? That's not my point, Your Honor, is it has to have a magic word. It could say compensatory relief, monetary claims, but it does not make any of those types of things available against states. You're talking so fast, I can't follow. I'm sorry, Judge Loken. I'll slow down. The statute does not make any type of monetary relief available against any type of entity. It sets up an equivocal, a linguistic equation. Hold on, wait a minute. Isn't the ordinary remedy at law money damages? Isn't that just by definition? Didn't you learn that in your first year remedies class? That's correct, Judge Erickson, but the statute does not make remedies at law available against any type of entity. That's the problem. Congress had said remedies at law are available against non-states. You're talking about the state. Making available against the state all remedies that are available against anybody else. It doesn't say that. Despite sovereign immunity. It says the remedies are available to the same extent that they're available against non-state entities and then does not tell us... I think we just said the same thing using slightly different words. Maybe so, but I guess my point is that it's equivocal. It doesn't fill out whether... I don't understand. I don't see the equivocation, but okay, I understand the argument. There's an illustration about when Congress does want to speak in unmistakable terms, it knows how to do so. There is an intellectual problem. That's easy to say. We hear that 500 times a year from lawyers. Congress could have said it better and so do what I want you to do. Congress has said it better. We do not require perfection even of Congress, much less administrative agencies. But Judge Loken, in the sovereign immunity context, the Supreme Court has demanded that in that situation, Congress has a duty to speak with perfect clarity on the subject. And other statutes are illustrative of when it can do so. So for example, in the intellectual property arena, Congress first codifies the fact that non-state private entities are subject to damages, unlike what we have in this statute. Then it said that states are subject to remedies to the same extent as private entities and such remedies include damages. So there we have Do I have to speak up? I can't. I'm sorry. I'm too old. I can't understand you. So there's a statute in the intellectual property arena and copyright, trademark and patent. An example is 17 U.S.C. 911. Those don't do anything for this case. I mean, they are so far afield, that's such a specialized area of the law. But they demonstrate an attempt to do this equalization type of statutory scheme, but they show that Congress knew that it had to do more than copy the cryptic text of 2000D-7 if it wanted to abide by the clear statement rule. Here it simply didn't. It simply said that states are subject to the remedies to the same extent as these other entities without saying whether these other entities are available. And that's why Franklin said that it does not say anything. Well, Congress knew they were, though. I'm sorry? I mean, Canon and Congress knew the other entities were subject to monetary damages. I don't accept that proposition, Judge Locum, because, in fact, if you look at the cases decided before 2000D-7 was enacted, you had Derone where the court explicitly reserved the issue of whether compensatory damages were available under Title VI, and lower courts actually said in both Lieberman in the Seventh Circuit and Drayden in the Fifth Circuit held that compensatory damages were not available. But didn't Franklin settle that, in the plain language of Franklin, damages are available in Title IX actions against private entities? No, it settled that as to non-sovereign private entities, because in Franklin Isn't that enough? Because it says public or private entity at the end of the key statute here. Now, that's what I call the Franklin bootstrapping argument, is that, you know, if Congress enacts a statute in 1986, then what about a case that's decided six or maybe 60 years later which settles the issue as to another type of entity? First of all, that doesn't deal with the possibility that the Federal Government is among those type of entities. But more importantly, Congress cannot discharge its duty under the clear statement rule by delegating that issue in the courts in that manner. The Supreme Court has made clear that in Sussman, for example, that federal courts may not step in and do the abrogating when the statute itself has failed to do so. So we best pass judgment under the clear statement rule at the time of the statute's enactment because that is where Congress, not the courts, must confront the serious implications of withdrawing a central aspect of the state's sovereignty and demonstrate its thoughtful consideration in the statutory text. But in Sussman, they are dealing with a phrase that said appropriate relief, which is so amorphous that you necessarily have to pour content into it. Now, remedies available at both law and equity is a much more defined term, one more easily understood, and it talks about reference then to any entity, public or private. I mean, I'm having a hard time following what's exactly necessary to satisfy your version of the rule. And to be clear, my point is not taking issue with the phrase remedy at law. To satisfy my understanding of the clear statement rule, the Congress could have simply dropped a period after the word for such a violation and not included to the same extent clause. But it didn't do that. Congress did not say states are subject to remedies at law. No, it said it twice instead of once. Maybe three times, did you do the first section do? But each time it said to the same extent. There's always the qualifier and it doesn't say whether any type of entity is actually subject to a remedy at law. That is not confronting the issue. That's delegating to the court. Maybe six, maybe 60 years later, if Franklin comes down and says, well, as to these other non-state entities, we deduce based on inference, based on a presumption about Congress's decision-making process that non-states are amenable, and then we attribute to Congress that that was its goal under this statute. But Congress has got to demonstrate its considered judgment at the time of the enactment. If there are no further questions, I will reserve the balance of my time. Thank you. Thank you. Mr. Bolling? Good morning, Your Honors. May it please the Court. My name is Mason Bolling. I'm one of the attorneys representing the Appellee, Ms. Freiberger, in the matter before the Court today. This Court should confirm that the Civil Rights Remedies Equalization Act, 42 U.S.C. 2007, authorizes money damages against state entities for violations of Title IX, and it should reject the University's contrary proposition for two reasons. First, as Spending Clause legislation, 2007 contains the requisite clear statement of all available remedies, and states are on notice that by receiving federal funds, they subject themselves to suits for money damages for violations of Title IX. Sossaman v. Texas did not change that analysis, and in fact, that case actually undermines the University's position in several significant ways. Secondly, as this Court has previously held, Title IX is plainly Section 5 legislation under the Fourteenth Amendment, and damages are an appropriate remedial measure to enforce the prohibition on gender discrimination. As to the first point Your second point is what, the Fourteenth Amendment? If for some reason this Court found You think our jurisprudence would go there, would let us go there? Well, this Court has ruled that Title IX is Fourteenth Amendment legislation. The Supreme Court has ruled that Congress has wide latitude Before or after our ADAA case? I mean, I Admittedly, Your Honor, the case I'm referring to is You don't need the Fourteenth Amendment if you want to, but if you want to get in trouble, keep going. All right. Let me return to the first point, Your Honor. In 2007, the Remedies Equalization Act means what it says. Because damages are available against a private actor for violations of Title IX, they're equally available against a public entity. That language is unambiguously clear. It is not cryptic. It is not, as the Court worried in Sossaman, an amorphous standard that was context-dependent, such as appropriate relief. Instead, it provides an exact, verifiable, concrete rule. Are money damages available against a private entity? Seeing that that answer is certainly yes, then they are available against a public entity, such as the university. Was the answer clearly less when the amendment was passed? I think a reasonable reader of 2007 would have interpreted it that way, Your Honor. No, no, no. That wasn't the question. You said it was, damages were clearly available against private parties. And I asked you, was it clear at the time the amendment was passed? Yes, Your Honor. I thought it took to 1992 to really figure that out. I thought there were circuit splits that had to be resolved in Franklin. There were certainly splits. There were cases from district courts that had held it as such. Franklin clarified that. There's nothing wrong with that. If we needed Franklin to clarify the remedies, that's okay. If Congress was resolving that circuit split, they could have said so much more clearly. They could have clearly addressed it. It could have been. How do we infer which side of the circuit split Congress had in mind when it passed the amendment? Well, in part, it's Congress's inaction since that time. Congress has, on multiple occasions. That's a bad way to interpret statutes, we've been warned. Well, in canon, amongst other cases, the Supreme Court has said, we assume that Congress knows what the Supreme Court is doing and how we're interpreting their statutes, and if they wanted to correct what the Supreme Court held in Franklin, they could have done so. That's not a good sovereign immunity argument. Sovereign immunity jurisprudence turns on what did Congress say in the statute at issue. Right. It has to be clear and unequivocal, and if Congress was dealing with a circuit split and made no comment on it, except to make a reference to remedies at law, how do we have the unequivocal expression of intent to coerce waiver of sovereign immunity? Because looking now at the text of 2000D7 We don't look now. We look then. That's the point. Well, Your Honor, let me back up and say this. It's reasonable to assume that Congress intended for monetary damages to be available under Title IX when they passed 2000D7 because First of all, why is it reasonable to presume? And second of all, reasonable to presume is not the same as a sovereign immunity unequivocal expression of intent. In our view, 2000D7 is an unequivocal expression of what remedies should be available, all remedies. And that Congress, when they enacted that Yes, but the remedies were unclear. This remedy was unclear. It's not at all clear from the congressional record that it was unclear to Congress. I mean, there may have been subsequent court decisions. As you alluded to earlier, lawyers can always make these arguments that But wait a minute. Cannon was, many jurists thought, was off the reservation, completely unpredictable from the text of Title IX. Now you're saying, I'm sure that the proponents of the amendment were clear what they would like to have, how they would like to have it interpreted. I mean, that's looking out over a big audience and finding your friends. Yes, Your Honor. But Congress, in fact, as the Court and Franklin wrote, validated Cannon's holding. And so what Congress did with 2000D7 is to say, yes, Cannon did what we meant to do. You used the magic word validation. I know that's in Justice Scalia's concurrence. Is it in the main opinion, the majority opinion, the validation of Cannon word? What the majority wrote was that the only They used the word validation. If you don't know, you I don't specifically recall. I recall that Justice Scalia did use the word validation. In fact, Justice Scalia said not only is it a validation of Cannon's holding, it's an implicit I know the rest is, yeah. But the majority did state, in fact, that they could not view any congressional action to signal anything except remedies were not limited in any way for violations of Title IX. And Justice Scalia agreed with that. The University, since Franklin, at least, and really even since 2007, struggles to come up with any cases where a court has agreed that 2000D7 is lacking in some way. And so those are cited throughout the briefs in a variety of circuits. In light of that, the University sort of has to say that Sauceman v. Texas did something different because there had to be a change in the law. Otherwise, what were all these court of appeals doing and getting it wrong? And so there's three critical parts of Sauceman that suggest the University is misreading the ways in which that case applies to 2000D7. So the first one is You're saying that since a bunch of circuits construed D7 as being a sufficient waiver, then what? Then the world has to kneel and pay homage? I don't understand the argument. I'm not suggesting that the courts spoke definitively and that that's the end-all, be-all. What I'm saying is that's the way the University phrases and positions their argument. That Sauceman did something different. In fact, if you look at the way they characterize a lot of those cases, they say they were pre-Sauceman. Sauceman announced an ultra-clear statement rule. That's the University's position. I don't think Sauceman changed sovereign immunity jurisprudence. It applied it to a difficult question. I agree, Your Honor. And so there's three parts of that opinion that are really critical. Which means you still, I mean, it means all the circuits might have been wrong that you're relying on. Because they did not, with sufficient rigor, apply apply sovereign immunity jurisprudence, as the Supreme Court was reminding them in Sauceman. Not on this issue, of course. And that's the critical part, that Sauceman was dealing with something totally different. In fact, Sauceman at times positions 2007 as sort of the antithesis of the language in RLUIPA. So, one, the phrase at issue in Sauceman is appropriate relief. I completely concur that we don't really know what that means. It can be context dependent, right? You need additional information to know what appropriate relief is. That's not what 2007 says. You could have argued either side of it before the decision. I'm sorry, Your Honor. You could have argued either side of the proposition. I'm sure that's true. Now you clearly agree. I'm sure that's true, Your Honor. But here, 2007 says something quite clear. It's not appropriate relief where we have to guess what that means. It says, if you get damages against a private entity, and everyone knows that you do now under Title IX, then you also get them against a public entity. That's exact. Secondly, in footnote 6, Justice Thomas noted that we can't look at other appropriate relief cases where the court has defined that phrase to determine what might be available against a sovereign. And the language he uses there is very interesting because it actually seems to parrot 2007. He says, liability against non-sovereigns could not put the states on notice that they would be liable in the same manner absent an unequivocal textual waiver. So that's exactly what Congress did in 2007. They said, okay, here's an unequivocal textual. What case were you referring to? That's footnote 6 of Sossaman v. Texas, the majority opinion. And so that's exactly what Congress did in 2007. They said, okay, to the same extent, in the same manner. And so they made it unequivocally clear. Finally, and the court alluded to this earlier, there was a fallback position in Sossaman, and that's that RLUIPA could come in under the residual clause of 2007, other statutes prohibiting discrimination. And at that point, Justice Thomas and the Supreme Court had the perfect opportunity to announce the rule the university wants this court to adopt, which is that it must say states are subject to monetary damages. Instead, what the court said is, no, RLUIPA is not a statute clearly prohibiting discrimination such that it would fall within the residual clause of 2007. In other words, the court seemed to assume that if it made it into the residual clause, damages would be an available remedy. Instead, they just carved it out and said it didn't apply at all. And it makes sense that damages are a remedy under Title IX, because as the court and Franklin pointedly observed, for students who are no longer attending the university or the school, there is no other relief available to them. Otherwise, they'll be remedy-less if monetary damages aren't on the table. And the amicus brief points out a number of reasons that in their firsthand experience, that's been true. For one thing... You're putting aside the capable of repetition argument in equitable jurisprudence? That's true, Your Honor. And so it might not be moot. The case may not be moot. There may be prospective injunctive relief that could assist future litigants or future students. But it would not do anything to assist the student who actually brought the case, the person who we're seeking to make whole. But perhaps the most critical policy argument that dovetails in with what Congress intended is, if we were to suddenly say that there's a difference between what remedies one may seek against a public entity and a private entity, we have a major imbalance for students across the nation. Suddenly, ones that attend private universities have a great deal more remedies available to them than those that attend public universities. There are many areas of the law that prevents the private schools. It's completely different in the public. Isn't that a terrible argument? No, Your Honor, because it's exactly what Congress intended in the Civil Rights Remedies Equalization Act. That was the whole point of it. Yes, there are discrepancies in a great number of areas of law between public and private entities. But Congress spoke to this one directly and said, those differences should no longer exist. The remedies should be equal. And that's the rule that we're proposing this Court adopt today. And if there are no further questions, we ask that you affirm the District Court. Thank you, Your Honors. Thank you. Thank you, Your Honor. Rebuttal? To be clear, Section 2000D-7 does not say whether remedies at law are available against any type of entity. The U.S. Supreme Court made that observation in both Franklin and Plain. You faded out on the key words. Does not say what? The Supreme Court in both Franklin and Lane observed that 2000D-7 does not say that remedies at law are available against any type of entity. Even my opponent seems to agree with the proposition that case law cannot be used to supply clarity to a statute that is otherwise unclear. So, for example, in Sossum, in the phrase appropriate relief had a rich history in case law as signaling damages. But the Supreme Court refused to use that case law to add damages to the statute because the statute itself did not clearly say so. So the case really comes down to this idea that I call the Franklin bootstrapping argument, which is that the clarity exists in the statute because years after the statute was enacted, the court, not Congress, finally answered the issue as to non-sovereign entities based on a presumption that that's the remedy that exists unless Congress explicitly rejects the remedy. In the majority opinion of Franklin, is there a word like validation like Justice Scalia used? So Justice Scalia used the word implicit acknowledgment. No, he used validation. Validation of canon and implicit acknowledgment of damages. That's a whole sentence. That comes from the majority opinion. It does mention, it says, it validates canon's holding, which was that an implied right of action exists. But the same passage, that very same passage, the court said that 2000D-7 says nothing about the nature of those available remedies. And then it dropped the analogy to the saving clause at issue in Milwaukee versus Illinois where Congress expressed no considered judgment on the issue. So the court was there, was really grappling with the issue of the fact that Congress passed legislation on the topic of Title IX generally, didn't say anything about rejecting a damages remedy, and so then as against non-sovereigns, the rule of Bell versus Hood means we can apply that rule as against non-sovereigns. But the fact remains that Congress has never said that remedies at law are available against the states. And it is fundamentally at odds with the clear statement rule for courts to supply that clarity when it's the obligation of Congress to confront its duty to grapple with the ramifications of overriding the state's sovereignty. That is the very purpose of the clear statement rule. And delegating that task to a federal agency or a future court in a common law tradition defies the purpose of the clear statement rule. A conditional waiver is not a clear statement waiver. And for that reason, we would ask that this court reverse the district court. Very good, thank you. Counsel, the case has been thoroughly and well-briefed and argued, and we'll take it under advisement. Please call the next case. Your Honor, the next case for argument is case number 17-1314, Western Missouri.